# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 14, 2002 Session

## BHARAT B. GANDHI v. WILLIAM RUCKER

### Appeal from the Circuit Court for Davidson County
### No. 95C-2721    Barbara N. Haynes, Judge

---

### No. M2001-00271-COA-R3-CV - Filed July 25, 2002

---

This is an appeal by Defendant from denial by the trial court of a Rule 60.02 motion to set aside a judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. The trial court denied the motion, and on consideration of the record, we reverse the judgment and remand the case for a trial on the merits.

### Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Circuit Court
### Reversed and Remanded

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and VERNON NEAL, SP. J., joined.

Charles Galbreath, Nashville, Tennessee, for the appellant, William Rucker.

William Timothy Hill, Nashville, Tennessee, for the appellee, Bharat B. Gandhi.

### OPINION

#### I. Facts

This case should be required reading in the first year of law school about how not to try a law suit.

Bharat B. Gandhi (Plaintiff/Appellee) filed suit against William Rucker (Defendant/ Appellant) on August 23, 1995 in the Circuit Court of Davidson County alleging that Rucker had threatened him with a deadly weapon, harassed him, and committed trespass upon his place of business on October 14, 1994. On November 15, 1995, Defendant Rucker, represented by Lionel R. Barrett , Jr. of the Nashville Bar, answered the Complaint. Ten months then passed after Defendant's answer with no action being taken. On September 18, 1996, the clerk entered a thirty day notice of pending dismissal.

The case was somehow set for trial on April 27, 1998, non-jury. Mr. Barrett moved for a continuance to a jury date and the case was reset for jury trial January 4, 1999. On December 30, 1998, Mr. Barrett filed a motion to continue the trial based on his schedule and the illness of his associate. On December 31, he filed a supplemental motion for a continuance asserting that Mr. Rucker was the defendant in a criminal matter growing out of the same incident that was the basis of the civil action and that such criminal matter was to be tried in the spring of 1999. Mr. Rucker wished to assert his Fifth Amendment right in the criminal case, and the motion asserted that the civil matter should be continued until after the criminal trial. By order of Judge Thomas Brothers, the civil case was reset to August 30, 1999.

On August 30, 1999, Mr. Barrett filed a Motion to Reset Civil Trial based upon his affidavit that the criminal case had not yet been tried and was set in November 1999 before the Honorable Seth Norman. Mr. Barrett again asserted Defendant's Fifth Amendment right, and the civil trial was continued again until February 9, 2000. On January 21, 2000, Mr. William Timothy Hill, counsel for Plaintiff, filed a Motion to Continue asserting that the parties were in agreement to such continuance, and an order was entered February 29, 2000, again resetting the trial of the case for August 1, 2000.

An order was entered September 1, 2000 indicating that the case came on for trial on August 2, 2000, when Defendant failed to appear either in person or by attorney, and that Plaintiff waived a jury and proceeded to trial. The court granted judgment against Defendant for $100,000.00 compensatory damages, $350,000.00 punitive damages, and $972.00 court costs.

On September 11, Jefre S. Goldtrap filed a Rule 60.02 motion on behalf of Defendant Rucker alleging mistake, inadvertence and excusable neglect. Plaintiff responded to the motion and Defendant then filed the affidavits of himself and attorney Goldtrap as follows:

## AFFIDAVIT

. . . .

1. I am William Rucker, Defendant in the above styled cause.
2. Until recently I have been represented by Attorney Lionel R. Barrett, Jr.
3. During the course of this civil action Attorney Barrett advised that he would get a trial date and advise me of the date.
4. I was never advised of the trial date in this matter.
5. I wish to pursue my legal rights in this matter and will defend my rights in a trial.

## AFFIDAVIT

. . . .

1. I am Jefre S. Goldtrap, attorney for Defendant, William Rucker.
2. Until the filing of the Motion to Set Aside the Default Judgment I did not represent Mr. Rucker.

3.     On the day set for (sic) this case was set for trial this attorney was advised to come to the court house for a trial. At the time I had not agreed to represent the Defendant and had not discussed the civil case with him. I was unable to reach Mr. Rucker to advise him of the trial date which I had been informed of by the court clerk's office. I did discuss the issue with counsel for the plaintiff and advised him, correctly, that at the time I did not represent Mr. Rucker. Because I did not represent him I made no appearance in court on his behalf.

4.     I do not recall ever appearing before this court regarding a continuance requested by the Defendant.

5.     Mr. Rucker has been represented by Attorney Lionel Barrett who, at the end of May, 2000, had his law license transferred to the disabled/inactive list. It was during this transition period that the trial date fell and Defendant was without counsel.

6.     Shortly after the trial date Defendant contacted this attorney, explained the dilemma and this attorney agreed to represent him. The Motion to Set Aside the Default Judgment was then filed.

7.     The Motion was not filed to inordinately delay these proceedings.

Judge Barbara Haynes denied the Motion to Set Aside on October 25, 2000, when Attorney Goldtrap did not appear at the hearing on the motion. Fifty-eight days passed after entry of the Order overruling the Motion to Alter or Amend filed by Attorney Goldtrap with no further action on the case.

On December 22, 2000, Attorney Charles Galbreath, now representing Defendant William Rucker, filed a Motion to Alter Judgment pursuant to Tennessee Rules of Civil Procedure 59.04 and 60 based upon information set forth in affidavits filed contemporaneously with the motion. These affidavits are those of William Rucker, Jefre Goldtrap, and Charles Galbreath and read as follows:

## AFFIDAVIT OF WILLIAM RUCKER

I paid attorney Lionel Barrett approximately $2,000 to represent me in the above-captioned case. I also paid him $1,800 to represent me in defending me against criminal charges the plaintiff, Bharat Gandhi brought against me for aggravated assault months before they were brought. It was later that this lawsuit was brought against me by the same party that I had never wronged in any way. Both this civil case and the criminal cases were continued time and time again against my wishes. It was either the lawyer for Gandhi or Lionel Barrett who had the cases continued. I wanted them all tried.

For some reason Lionel Barrett did not advise me that a motion for default judgment was filed against me.

Earlier this year I had been notified by a pre-trial release to be in Judge Seth Norman's Criminal Court on the criminal charges. I went to court and was asked by Judge Norman who my lawyer was. I told him Lionel Barrett and was asked to call

his office. I did so and was told by the lady who answered the phone that Jefre Goldtrap, whom I did not know, would represent me instead of Mr. Barrett. Mr. Goldtrap came to court and the case was reset until about November 1, 2000.00. (sic) Mr. Goldtrap got the charges dismissed. He did not ask me for a fee and I thought that was because I has already paid Mr. Barrett, whose office he was in. I also thought Mr. Goldtrap had taken over the civil case because I had paid the fee in their office. He later told me a default judgment had been taken against me. This was the first I knew about this and I asked Mr. Goldtrap to do what needed to be done to protect me. He told me he would try to get the case reset for trial. He went to court without me, telling me I did not need to be there. He later told me the judgment against me was for $450,972.00.

I never, at any time, failed to go to court or do anything else I was told to do by either Mr. Barrett or Mr. Goldtrap. I was never told that Mr. Barrett had stopped practicing law or was not representing me until the day Mr. Goldtrap told me he was taking Mr. Barrett's place. This was when I first learned Mr. Barrett was no longer practicing law and that he was taking over my case.

I do not know why the secretary, Mr. Barrett, Mr. Goldtrap or anyone else in the office did not write or telephone me that I was supposed to be in court on this case.

I am not familiar with law and depended on Mr. Barrett to protect me. No one did.

### AFFIDAVIT OF JEFRE GOLDTRAP

. . . .

I, Jefre Goldtrap, being sworn, state the following as a summary of my representation of Mr. William Rucker.

Mr. Rucker retained Lionel Barrett.

Before Mr. Barrett's retirement I shared office space with Mr. Barrett. I paid a portion of my income towards office overhead. I kept my own files for my clients. When I appeared for Mr. Barrett in any one of his cases, I would calculate an hourly rate and deduct this amount from my allotted overhead costs. I did not know the facts and circumstances of many of Mr. Barrett's cases and specifically of the two cases regarding Mr. Rucker. With this said the following summarizes my representation of Mr. Rucker.

My office was advised on July 10, 2000, that Mr. Rucker was in Division IV of the Davidson County Criminal Court, for trial. I appeared and asked that the case be set on a discussion docket. The case was then reset to August 10, 2000, for discussion. At this point I was aware of his criminal case.

Mr. Rucker apparently had a civil trial set in August. I did not represent Mr. Rucker in the civil matter. I was not aware of the facts and circumstances of the procedural status of that case. My office was called by the court clerk and asked to appear on the trial date. This call was received in my office, to the best of my recollection, perhaps one or two days before the trial date. I attempted to call Mr.

Rucker to ask him about his representation for the civil trial, but the number I had was incorrect and I was unable to reach him. There was insufficient time to send Mr. Rucker a letter. On August 2, 2000, I appeared at the court clerk's office where I met Mr. Hill. He and I discussed the situation with a clerk. I advised the clerk and Mr. Hill that I did not represent Mr. Rucker in the civil matter and did not know anything about the civil mat[t]er. I made no appearance in court regarding the civil case.

A few days later, after being notified of the default judgment, Mr. Rucker called my office and made an appointment for August 10, to discuss the civil case. I advised Mr. Rucker that I would assist him, now with both the criminal and civil matter. A motion to set aside a default judgment was then filed. At the August 10 meeting all relevant numbers were exchanged between Mr. Rucker and myself so we would remain in contact.

Mr. Rucker and I fully discussed the criminal matter at the August 10 meeting and discussions were had between myself and district attorney general. I prepared for trial on November 13, 2000. On said date the state's witness, the plaintiff in the civil case, did not appear and the criminal case was dismissed.

A motion to set aside the default judgment was argued on December 1, 2000, and respectfully denied. I advised Mr. Rucker of the result of the motion. I advised that he could appeal the issue or seek other relief and I suggested that he seek new counsel for this attempt. Mr. Rucker contacted Mr. Galbreath superseded to date.

## AFFIDAVIT OF CHARLES GALBREATH

. . . .

I, Charles Galbreath, after first being duly sworn, depose as follows:

That I have been retained by the defendant William Rucker to represent him in this motion by reference from attorney Jefre Goldtrap.

As sworn to in the affidavits exhibited herewith, he is of the opinion that the judgment by default entered in this cause should be set aside because he was not advised by previous counsel representing him that trial had been scheduled on August 2, 2000 and that those attorneys have advised him as follows.

Lionel Barrett was retained and paid some $3,800.00 by William Rucker to represent him in the defense of the complaint in this case which had been duly answered and a criminal case involving the same allegations. Mr. Barrett withdrew from the practice of law in the latter part of May, 2000, and failed to inform the Defendant that the criminal case was set for trial in the Fourth Criminal Court of Davidson County on the 10th day of July, 2000, before the Honorable Seth Norman, Judge. Notice of the trial date was furnished him by telephone by his bondsman and he appeared in court as advised. When the case was called by the clerk, the Judge inquired of Mr. Rucker as to who would represent him, it being known to the court, but not him, that Mr. Barrett was no longer an attorney. When advised by the defendant that Mr. Barrett was his lawyer, the court asked him to telephone the office where Mr. Barrett had practiced law for years in the office with Attorney Jefre Goldtrap. The secretary was advised of his dilemma and she told him Mr. Goldtrap

would come to court and represent him. Mr. Goldtrap appeared and the was reset for further discussion on August 10, 2000, and trial on November 13, 2000. At that time, the prosecuting witness, the plaintiff in this case, failed to appear and Judge Norman dismissed the prosecution. Mr. Goldtrap explained to Mr. Rucker why Lionel Barrett could not represent him and that was why he did so in the criminal matter. The defendant was erroneously of the opinion Mr. Goldtrap would also represent him in this civil case. Mr. Barrett's office was advised this case had been set for trial on the 2nd day of August but it is not known what measures to advise Mr. Rucker of the trial date and the necessity of his retaining other counsel to represent him in the civil matter were taken by Attorney Barrett or his office. No appearance was made by the defendant or an attorney on his behalf at the trial of this cause and a judgment in the amount of $450,972.00 plus costs was rendered against him. When he received notice of the judgment, he asked Mr. Goldtrap to have it set aside and Mr. Goldtrap filed a motion to do so which was denied. Affidavits of Attorney Jefre Goldt[r]ap and defendant William Rucker are filed contemporaneously with this affidavit in support of the Motion to Alter Judgment. Lionel Barrett has been asked to reduce his admissions that []he did not adequately represent the defendant but to date has failed to do so and if he does not, will be subpoenaed to attend the hearing of this motion.

The courts should take judicial knowledge of Mr. Barrett's acknowledged failure to adequately represent many clients and Mr. Goldtrap states he has attempted to and has represented a dozen or more clients who had retained Mr. Barrett. Attached hereto is a brief filed in the Court of Criminal Appeals to obtain a new trial in a case in which Mr. Barrett failed to properly represent two other clients. In that case, he advised his clients not to accept a plea bargain to have the sentences suspended when the prosecution had video tapes of them committing shoplifting which he would not allow them to see but assured them it would not prove their guilt.

Mr. Bar[r]ett's office afforded no defense at all and for the reasons set out in such appellate decisions as Tennessee State Bank v. Lay, 609 S.W.2d 525 (Tenn. Ct. App. 1992) make clear that a new trial should be granted due to the negligence causing the mistake, inadvertence, surprise and the []excusable neglect of his retained attorney who, although assuring him he would be notified of the trial date when set, neglected to do so. He made many telephone calls to the office when he had paid to have the charges against him defended but was never told when the trial was scheduled.

The motion by Mr. Galbreath was overruled on January 23, 2001 and promptly appealed.

On February 22, Mr. Galbreath filed, in the trial court, an Amended Rule 60 Motion accompanied by the Affidavit of Lionel Barrett, together with the Amended Affidavit of William Rucker. Then, on March 2, 2001, Mr. Galbreath filed, in the trial court, a Motion for Finding of Fact and Conclusion of Law. The case already being on appeal to this Court, an Order was entered by this Court on March 9, 2001 holding, in part:

The court also concludes that the trial court is without jurisdiction to consider the appellant's amended Tenn. R. Civ. P. 60 motion. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, (Tenn. 1994). Although not specifically requested by the appellant, the court will remand the case to the trial court for consideration of the amended Tenn. R. Civ. P. 60 motion in accordance with *Spence v. Allstate Ins. Co.*, 883 S.W.2d at 596.

It is, therefore, ordered that the motion to stay execution of the judgment pending appeal be denied.

It is further ordered that this appeal be remanded to the trial court for the limited purpose of considering the appellant's amended Tenn. R. Civ. P. 60 motion. All proceedings on appeal shall be stayed pending the trial court's resolution of the amended Tenn. R. Civ. P. 60 motion. The appellant shall promptly notify this court once an order resolving the motion has been entered.

Judge Barbara Haynes entered an order on April 26, 2001 in the trial court as follows:

Defendant's counsel announced that the Honorable Randall Wyatt, Judge of the Criminal Court of Davidson County, Tennessee, Division II, would, if the Court approved, appear as a character witness for the Defendant. The Court would not approve and announced that the amended motion to set aside the default judgment was overruled. The Court further ruled that defendant's request for a finding of facts and law and to stay execution pending appeal would be heard on the 27th day of April, 2001, at 9:00 A.M., with each party to file proposed findings of fact and law prior to said hearing.

Findings of Fact and Conclusions of Law were later made by Judge Haynes on May 1, 2001 as follows:

1. Plaintiff filed suit August 23, 1995 against the Defendant for trespassing onto the Plaintifff's [sic] place of business and threatening the Plaintiff with a hand gun.
2. Defendant filed an Answer on November 15, 1995.
3. The Plaintiff filed a Motion to Set on 9/26/96 and again on 1/17/97.
4. On February 12, 1997, the case was set to go to trial on August 25, 1997.
5. On 6/27/97, the Plaintiff filed a Motion to Continue to April 27, 1998.
6. On 4/27/98, the Defendant requested a jury trial and the case was set for January 4, 1999 before a jury.
7. The Defendant continued the January court date since he had to appear in Criminal Court for another matter. The case was reset for August 30, 1999.
8. The case was again reset by the Defendant because he asserted his 5th Amendment right to stay silent while his criminal case was pending. The case was reset for February 9, 2000.
9. On February 29, 2000, the parties jointly continued the trial to August 1, 2000.

10. At some point between February 2000 and September 2000, Lionel Barrett quit the practice of law.

11. On August 1, 2000, an Order was entered by Judge Brothers granting the Plaintiff a default judgment against the Defendant since he failed to appear for trial and no attorney was present. The judgment was for $450,792.00.

12. The Defendant filed a Motion to Set Aside the Default Judgment. Mr. Goldtrap filed the motion on behalf of the Defendant since he had become aware of Mr. Barrett's assumption that Mr. Goldtrap was taking over all his files. However, Mr. Goldtrap was not aware of Mr. Barrett's assumption. Mr. Goldtrap explained this situation to the Court. The motion for default judgment was denied October 25, 2000.

13. On December 22, 2000, Defendant's new counsel, Charles Galbreath, filed a Motion to Alter Judgment. The Court denied the Motion on January 25, 2001.

14. A Notice of Appeal was filed on January 1, 2001.

15. Defendant filed an Amended Rule 60 Motion on February 22, 2001.

16. The Appellate Court remanded the case to the Trial Court for consideration of Appellant's Amended Rule 60 Motion to be decided in accordance with _Spence v. Allstate Inc. Co._, 883 S.W.2d 586.

17. At hearing of the Amended Rule 60 Motion on April 6, 2001, the Court denied the Amended Rule 60 Motion but allowed to parties to submit their own Findings of Fact and Conclusions of Law.

18. In support of the Defendant's Amended Rule 60 Motion, Defendant points to an affidavit of Lionel Barrett stating that Mr. Barrett was under the assumption that Mr. Goldtrap would take over all his cases and that the Defendant failed to appear for trial through no fault of his own.

19. Defendant does not meet the standard as set forth in Rule 60.02 of the Tennessee Rule of Civil Procedure.

IT IS THEREFORE, ORDERED ADJUDGED AND DECREED that the Defendant's Amended Rule 60 Motion is denied.

Counsel for Defendant filed their Notice of Renewed Appeal, Designation of Record and Motion to Stay on May 17, 2001 with a certificate by the clerk of the Davidson County Circuit Court that he, on that day, mailed a copy of the Renewed Notice of Appeal to the clerk of the Court of Appeals. This Renewed Appeal was accompanied by affidavits of Jefre Goldtrap and Charles Galbreath, attorneys at law.

With the record in this state, it was necessary for this Court, on May 23, 2001, to issue the following order:

> On March 9, 2001, this court denied the appellant's motion for a stay pending appeal and remanded the case to the trial court for the limited purpose of considering the appellant's Tenn. R. App. P. 60 motion. The trial court subsequently denied the appellant's Tenn. R. App. P. 60 motion. The appellant has now filed a notice of

renewed appeal from that denial of his Tenn. R. App. P. 60 motion and another motion for stay. The new motion for stay presents no new grounds, and the court finds no reason to depart from its earlier decision denying the appellant's request for a stay. The court also concludes that the appeal from the denial of the Tenn. R. App. P. 60 motion should be consolidated with the currently pending appeal.

It is, therefore, ordered that the appeal from the denial of the Tenn. R. App. P. 60 motion shall be consolidated with this appeal and the trial court clerk may prepare one consolidated record. The time limits provided by Tenn. R. App. P. 24 shall run from the date the renewed notice of appeal was filed in the trial court.

It is further ordered that the motion for stay be denied.

Finally, on July 3, 2001, a joint order was issued in the trial court by Judges Thomas W. Brothers and Barbara N. Haynes as follows:

It appearing to the Court that the Defendant in this cause has requested that his Motion for Relief pursuant to Rule 60.02 be heard by the Sixth Circuit Court. The Judges of the Sixth Circuit Court and Third Circuit Court have conferred and both agree that said request is not well taken and should be denied.

This cause was originally filed as a Sixth Circuit Court case. On the day of trial it was assigned <u>for trial purposes</u> to the Third Circuit Court. The Defendant failed to appear and Judge Barbara Haynes, Judge of the Third Circuit Court, found in favor of the Plaintiff and awarded total damages in the amount of $450,972 plus costs.

The Order of Judgment was mistakenly included in orders to be signed by Judge Thomas W. Brothers, Judge of the Sixth Circuit Court. It should be noted that Plaintiff's counsel did indicate[] that the signatory Judge was "Honorable Barbara N. Haynes." Nonetheless, the Order was signed by Judge Thomas W. Brothers.

Since proof was presented to Judge Haynes and not to Judge Brothers, both Judges are in agreement that any motion for relief from the judgement should be heard by the Judge who actually heard the case rather than the one who merely signed the Order. Therefore, it is determined that any motion for relief from judgment in this cause must be filed in the Third Circuit Court to be heard by Judge Barbara N. Haynes.

In the May 1, 2001 Findings of Fact and Conclusions of Law made by the trial court, it was found that, "Defendant does not meet the standard as set forth in Rule 60.02 of the Tennessee Rules of Civil Procedure."

We respectfully disagree.

A default judgment, according to those same findings of fact and conclusions of law, was entered against the defendant on August 1, 2000 when he failed to appear, either in person or by counsel, and a judgment was thereupon entered against him for $450,792.00. The Rule 60.02

motions filed by both attorney Goldtrap and his successor, attorney Galbreath, on behalf of Defendant, were directed toward setting aside this "default" judgment, as it is characterized by Judge Haynes in her Findings of Fact and Conclusions of Law and her Order of April 26, 2001. If it was indeed a default judgment to which the Rule 60.02 motions were directed, the facts underlying the case at bar are much stronger for Appellant than were the facts in *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn. Ct. App. 1980). Therein, the rule applicable to default judgments was explained in detail:

> Defendant contends the chancellor applied an erroneous standard of proof for relief under Rule 60.02, T.R.C.P. An excerpt from the chancellor's bench comment, incorporated in the judgment, demonstrates the standard applied by the trial court:
>
>> Judgments of Courts of record are not to be lightly changed, altered, amended or set aside, but only done upon very clear, convincing, cogent evidence that a true injustice has been done to the complaining party and that the complaining party is in no wise responsible, or termed in another way, negligent in protecting that party's interest.
>
> Rule 60.02 permits the court to relieve a party or his legal representative from a final judgment, order or proceeding due to a mistake, inadvertence, surprise or excusable neglect. The burden is upon the movant to set forth in a motion or petition and supporting affidavits facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect. *Hopkins v. Hopkins*, 572 S.W.2d 639 (Tenn. 1978). Negligence on the part of the moving party is precisely the type of error this rule is designed to relieve. *Tate v. County of Monroe*, 578 S.W.2d 642 (Tenn. App. 1978). And mistake, inadvertence, surprise, excusable neglect or misfortune of the moving party's attorney may be grounds for vacating a default judgment. *Keck v. Nationwide Systems, Inc.*, 499 S.W.2d 266 (Tenn. App. 1973). The granting of the motion to set aside a default judgment is within the sound discretion of the trial court and the court should grant the application whenever there is reasonable doubt as to whether the default judgment should be set aside. In *Keck*, Presiding Judge Parrott, speaking for this court, stated:
>
>> It seems to be a universal rule that when there is a reasonable doubt as to whether a default judgment should be set aside upon proper application, the court should exercise its discretion in favor of granting the application so as to permit a determination of the cause upon the merits. 499 S.W.2d 266 at 267.
>
> . . .
> We conclude the trial judge applied the wrong standard in denying the application to set aside the default judgment.

-10-

*Lay*, 609 S.W.2d at 526-27.

Mr. Rucker hired a prominent Nashville lawyer to represent him, and the negligence of this lawyer is not only self evident from the record but conceded by his affidavit. At the time of the events resulting in the judgment against Defendant, his attorney had taken disability status and was no longer authorized to practice law, though Mr. Rucker had no knowledge of this.

His second attorney, Mr. Goldtrap, had shared office space with Mr. Barrett but had no knowledge of Mr. Rucker's case. He attempted to represent Mr. Rucker and was successful in getting the criminal charges that had been brought against Rucker dismissed when Plaintiff in this case, who was the alleged victim of the criminal case, failed to appear and prosecute the criminal matter. Mr. Goldtrap did not show up, however, to prosecute his 60.02 motion in the civil case, nor did he notify Mr. Rucker that he was to be in court. Mr. Galbreath finally put together a Rule 60.02 motion with proper affidavits, accompanied by extraneous hearsay documents having no bearing on the case.

The amended Rule 60.02 motion filed by Mr. Galbreath is well taken under 60.02(1) on the basis of mistake, inadvertence, surprise, and excusable neglect. Indeed, in applying the standard of *Tennessee State Bank v. Lay*, it is difficult to imagine a more compelling case for reversal.

Even if we are not dealing with a default judgment but are, in fact, dealing with the abuse of discretion rule, *Holiday v. Shoney's S., Inc.*, 42 S.W.3d 90 (Tenn. Ct. App. 2000), the facts disclosed by the record still justify reversal.

While it is unnecessary to discuss Rule 60.02(5), which "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02," *Holiday*, 42 S.W.3d at 94, a study of this record as a whole shows a case that is indeed "extreme, unique, exceptional, or extraordinary".[1]

The judgment of the trial court is reversed, and the Rule 60.02 motion, along with the amended Rule 60.02 motion, is sustained under Rule 60.02(1). The case is remanded to the trial court for trial on its merits. Costs are assessed against Appellee.

_____
WILLIAM B. CAIN, JUDGE

---

[1]Adding to the problems involved in this case is the fact that the one who had participated from start to finish, namely the appellee's lawyer, after having requested oral argument, simply did not appear before this Court to defend the $450,972.00 judgment.